UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

| | |
|---|---|
| MELESSA HENDERSON,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security Administration,<br><br>    Defendant. | ED CV 08-01904-SH<br><br>MEMORANDUM DECISION<br>AND ORDER |

## I. PROCEEDINGS

Plaintiff filed a Complaint on January 8, 2009, appealing a final administrative decision denying Supplemental Security Income (SSI) benefits. Both parties consented to proceed before the undersigned United States Magistrate Judge, after which Defendant filed an Answer on April 14, 2009. The matter has been taken under submission.

//
//

## II. BACKGROUND

Plaintiff applied for SSI benefits on May 27, 2005, asserting a disability onset date of January 1, 2004 due to a learning disability, arthritis, carpal tunnel of the right hand, and mental health disorders.  (A.R. 93-97, 111, 141-142).  The Social Security Administration (SSA) denied her claim on October 4, 2005.  (A.R. 74).  Plaintiff filed for reconsideration and was denied on February 17, 2006.  (A.R. 63, 72).  Thereafter, Plaintiff filed a request for hearing before an Administrative Law Judge (ALJ).

Following the hearing on August 12, 2008, the ALJ concluded that Plaintiff was not and had not been disabled during the period alleged through the date of the decision. (A.R. 11, 13-14).  The ALJ determined that Plaintiff suffered from various mental disorders, but that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the "listed impairments".  Furthermore, the ALJ found that: (1) Plaintiff could perform work at any exertion level; (2) Plaintiff's mental impairments limit her to non-public, simple, repetitive tasks in an environment with no exposure to illegal or legally prescribed drugs; and (3) Plaintiff cannot perform safety operations or be responsible for the safety of others.  (A.R. 14-18).  Additionally, the ALJ determined that the Plaintiff had limited education and is able to communicate in English.  (A.R. 21).  Finally, in the course of his decision, the ALJ determined that Plaintiff's testimony was less than fully credible based on contradictory evidence in the medical record and credibility factors relevant to her claim.  (A.R. 18-20).

Plaintiff filed a request for review of the ALJ decision from the Appeals Council and was denied on October 28, 2008.  (A.R. 4).  This action followed.

///

///

///

### III. CONTENTIONS OF THE PARTIES

Plaintiff contends that: (1) the ALJ failed to properly consider the statements of the SSA claims representative regarding Plaintiff's ability to read and write, (2) the ALJ failed to properly consider lay witness statements made by Plaintiff's sister about Plaintiff's ability to read and write, (3) the ALJ failed to fully and fairly develop the record in regards to the Plaintiff's ability to read and write, and (4) that the ALJ erred in finding that the Plaintiff could perform other work.

Defendant asserts that the ALJ properly considered statements made by the SSA claims representative as part of the overall record and properly discounted lay witness statements made by Plaintiff's sister by providing germane reasons. Also, Defendant contends that the record was adequate to adjudicate Plaintiff's application and the ALJ did not have a duty to seek additional evidence regarding Plaintiff's ability to read and write. Finally, Defendant maintains that the ALJ properly found that Plaintiff could read and write and could perform other work in the national economy existing in sufficient numbers.

### IV. DISCUSSION

Under 42. U.S.C. §405(g), this court reviews the ALJ's decision to determine if: (1) the ALJ's findings are supported by substantial evidence; and (2) the ALJ used proper legal standards. DeLorme v. Sullivan, 924 F.2d 841 (8th Cir. 1991). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971), but less than a preponderance." Desrosiers v. Secretary of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988). This court cannot disturb the ALJ's findings if those findings are supported by substantial evidence, even though other evidence may exist which supports Plaintiff's claim. See Torske v. Richardson, 484 F.2d 59, 60 (9th Cir. 1973), cert. denied, Torske v. Weinberger, 417 U.S. 933 (1974); Harvey v. Richardson, 451

F.2d 589, 590 (9th Cir. 1971).

It is the duty of this court to review the record as a whole and to consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). The court is required to uphold the decision of the ALJ where evidence is susceptible to more than one rational interpretation. Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984). The court has the authority to affirm, modify, or reverse the ALJ's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g). Remand is appropriate where additional proceedings would remedy defects in the ALJ's decision. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).

The ALJ follows a five-step sequential evaluation for determining whether a person is disabled. First, it is determined whether the person is engaged in "substantial gainful activity." If so, disability benefits are denied. Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments. If the person does not have a severe impairment or combination of impairments, benefits are denied. Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments." If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled. Fourth, if the impairment does not meet or equal the "listed impairments," it is determined whether the impairment prevents the person from performing past relevant work. If the person can perform past relevant work, benefits are denied. Fifth, if the person cannot perform past relevant work, the burden shifts to the ALJ to show that the person is able to perform other kinds of work. The person is entitled to disability benefits only if he is unable to perform other work. 20 C.F.R. §416.920 (1994); Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

**A.**   **The ALJ properly considered the statements of the SSA claims**

**representative in assessing credibility.**

Plaintiff argues that the ALJ did not properly consider the observations and statements of the SSA claims representative who interviewed her to complete the Field Office Disability Report on November 16, 2005. In that report, the claims representative observed that Plaintiff had difficulty with reading and writing, stating that "she was unable to read the application and only signed her name" and that the application had to be filled in by the claims representative. (A.R. 132). However, a separate Field Office Disability Report was completed by a different claims representative on June 16, 2005, prior to the one referenced by the Plaintiff. In this earlier report, the claims representative observed that, although Plaintiff indicated having a learning disability and attending special education classes, Plaintiff could read and write and evinced "no signs of disabling conditions alleged." (A.R. 91). Additionally, the Plaintiff has been in and out of the correctional system for a significant portion of her adult life, and her prison and probation treatment records cover broadly the period from December 2004 until June 2006, as well as the period from September 2007 to June 2008. These treatment records do not validate Plaintiff's statements regarding the intensity, persistence, and limiting effects of her physical and mental impairments, nor do they substantiate her claim that she is completely unable to read and write.

Where the evidence is in conflict, the ALJ has the discretion to chose between the contradicted evidence. Sanchez v. Secretary of Health & Human Servs, 812 F2d 509, 511 (9th Cir. 1987). Where reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).

In his decision, the ALJ considered the statements of both SSA claims representatives in the separate Field Office Disability Reports in determining the Plaintiff's level of impairment and ability to read and write. (A.R. 19).

Additionally, the ALJ examined the extensive medical records to evaluate Plaintiff's physical disability claim and determined that Plaintiff's mental health conditions were manageable under medication. (A.R. 14-18). Evidence in the treatment records indicate that Plaintiff could read and write. Treatment notes from April 2002 discussed Plaintiff waiting for responses to letters she had written home while in prison. (A.R. 174). Also, Plaintiff completed and signed her own disability appeal form. Her writing was clear and legible with the exception of minor misspellings. (A.R 141-148).

    The ALJ properly considered the statements of the SSA claims representative as one of several reasons to discount Plaintiff's credibility. (A.R. 19-20). The ALJ's assessment of plaintiff's credibility should be given great weight. Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). "[I]f the ALJ's decision is based on a credibility assessment, there must be an explicit finding as to whether the plaintiff's testimony was believed or disbelieved and the testimony must not be entirely discounted simply because there was a lack of objective findings." Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986). Furthermore, if the ALJ chooses to disregard plaintiff's testimony, the ALJ must set forth specific cogent reasons for disbelieving it. Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981). Although the Plaintiff did testify that she could not read or write and reported that she had special education classes, the ALJ noted that Plaintiff reported to the SSA claims representative who met her with on June 16, 2009 that she could read and understand English and that she could write more than her name in English. (A.R. 19, 91-93, 381).

    The ALJ also considered Plaintiff's untruthful statements about her drug and alcohol use in determining credibility. (A.R. 18-19). Plaintiff testified that she never used illegal drugs or drank any alcohol in the past ten years, but treatment records showed a previous diagnosis of cocaine dependence and other drug use, as well as a diagnosis of alcohol dependence, in 2004, 2005, and 2007.

(A.R. 160, 173, 280, 342, 357, 380).  Additionally, the ALJ factored in Plaintiff's criminal record in assessing her credibility.  (A.R. 19).  Plaintiff was convicted of manslaughter in 1989, though the ALJ did acknowledge that Plaintiff indicated the stabbing was either in self-defense or an accident.  (A.R. 19, 152, 169).  She also has a criminal history of arrests or convictions for a number of crimes, including false identification to a police officer, robbery, and drug related offenses.  (A.R. 330, 353).

Also, the ALJ took into account Plaintiff's lack of candor about her impairments, and found that she exaggerated her subjective symptoms.  (A.R. 19).  A California Department of Corrections staff clinician stated that Plaintiff "over endorsed" and had "inconsistent symptoms," and said that the "only observable symptoms are of antisocial personality." (A.R. 244)  Upon Plaintiff's release from prison in June of 2008, mental health staff noted that she was stable and had no mental health issues.  (A.R. 369).

The ALJ properly considered the statements of the SSA claims representative, and viewed the evidence on record as a whole to give explicit reasons for discounting Plaintiff's credibility.

**B.     The ALJ properly considered the statements of Plaintiff's sister.**

Plaintiff claims that ALJ did not properly consider statements made by a lay witness, Plaintiff's sister, who filled out an Adult Third Party Function Report detailing how the Plaintiff's condition limits her activities.  Plaintiff's sister stated on the form that Plaintiff's "reading is limited," that Plaintiff does not follow written instructions well and has "poor writing skills." (A.R. 118-119).  As discussed above, evidence on the record in the form of treatment records and a disability appeal form filled out and signed by Plaintiff contradict these statements.  (A.R. 141-148, 174).

"Lay testimony as to claimant's symptoms is competent evidence that an

ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503 (9th Cir. 2001); Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing Dodrill v. Shalala, 12 F.3d 915, 918-919 (9th Cir. 1993)). "One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence." Lewis, 236 F.3d at 511; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984).

   The ALJ gave due consideration to the written statements made by Plaintiff's sister, but found these statements credible only to the extent that they described what activities the Plaintiff is able to do, and listed germane reasons for discounting them beyond that. First, the ALJ noted that these statements were not given under oath, and he found these statements to be "no more than parroting of the subjective complaints alleged by the claimant." (A.R. 20 -21). Second, the ALJ pointed out inconsistencies these statements had with the evidence on record. (A.R. 21). For instance, Plaintiff's sister said that Plaintiff was able to shop for only about half an hour before needing to rest, and required the use of a wheel chair. (A.R. 117). However, there is no medical evidence that Plaintiff has ever used a wheelchair. Also, Plaintiff's sister stated that Plaintiff needs help showering and required daily reminders to take care of personal grooming, but records from California Department of Corrections indicate she had no problems with grooming and personal appearance. (A.R. 115-116, 167-168, 172, 335, 339, 341, 357).

   According to the Plaintiff's sister, Plaintiff's impairments affect her ability to walk, sit, lift, kneel, talk, understand, complete tasks, concentrate, get along with others, and remember or understand things. (A.R. 119). However, Plaintiff's medical records and consultative exams do not indicate any findings that would support such symptoms. For instance, as to the physical impairments alleged, x-rays of her right shoulder done in May 2003 had no abnormalities and

x-rays of her right elbow were normal except for some soft tissue swelling. (A.R. 183, 184). X-rays of Plaintiff's lumbosacral spine from May 2001 show transitional vertebra at the thoracolumbar level and lumbosacral junction, but otherwise an unremarkable spine with no herniated disc. (A.R. 190). Physical examinations done in 2008 at the Central California Women's Facility included x-rays of her right wrist, which showed no fracture, dislocation, or soft tissue problems. (A.R. 372). Glucose testing done in June of 2008 reported no signs of diabetes. (A.R. 365-366).

As to the mental health impairments alleged, mental health records provided by the California Department of Corrections and Central California Women's Facility report on Plaintiff's psychiatric conditions from March 2003 until June 2008. These treatment records reveal relatively normal mental status examinations, and that medications being taken by Plaintiff effectively managed her bipolar disorder and other mental conditions. (A.R. 157, 336, 338, 357, 369, 374). A SSA Psychiatric Review Form completed by an agency physician on August 15, 2005 reported only mild restrictions in daily living and mild difficulties in maintaining concentration, persistence, or pace. (A.R. 216).

In addition to the various contradictions Plaintiff's sister's statements had with the weight of the evidence in the record, the ALJ points out that Plaintiff was living with her sister, so that her sister shared a financial interest in seeing Plaintiff awarded benefits, and was not unbiased in her opinions. Thus, the ALJ properly considered the statements of Plaintiff's sister and gave germane reasons for discounting them.

**C.   The ALJ had adequate evidence on record and was not required to seek additional evidence.**

Plaintiff claims that the ALJ failed to properly develop the record because additional evidence was required to clear up ambiguities regarding Plaintiff's

ability to read and write. In her interview with the SSA claims representative on June 16, 2005, Plaintiff reported that she attended special education classes with San Bernardino City Unified from 1976 to 1977 to receive "special help with reading and general studies." (A.R. 97). Plaintiff argues that the ALJ should have requested these school records to determine the extent of her reading and writing limitations.

The ALJ has an independent "duty to fully and fairly develop the record to assure that claimant's interests are considered." Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry," Tonapetyan v. Halter, 2001 Daily Journal D.A.R. 2775, 2777 (9th Cir. 2001); Smolen, 80 F.3d at 1288.

Here, the ALJ had adequate evidence on record to evaluate Plaintiff's application and make a discretionary decision on possible conflicting evidence regarding Plaintiff's ability to read and write. Medical records from the California Department of Corrections and the Central California Women's Facility covered a majority of the time from March 2003 until June 2008. Additionally, other evidence existed on record that demonstrated Plaintiff could read and write. In particular, Plaintiff filled out and signed her own disability appeal form, reported to the SSA claims representative on June 16, 2005 that she could read and understand English, and wrote letters home while in prison. (A.R. 93, 141-148, 174). Also, medical exam request forms on which Plaintiff wrote descriptions of her symptoms indicated an ability to read and write. (A.R 293, 304, 314, 316). Plaintiff also said that she had worked for a year as a maid, which evinces that she has the reading and writing skills to do such work. (A.R. 94, 99).

Plaintiff has not provided any indication that requesting the 30 year old

school records from San Bernardino City Unified would make a difference in the weight of the evidence. The ALJ had ample evidence to adjudicate the case.

Plaintiff also argues that there were ambiguities in the medical record as to her ability to read and write, citing to a Mental Work Capacity Evaluation form completed by Dr. Han V. Nguyen in May 2006, which indicated that Plaintiff had only a limited ability to carry out, understand, and remember short and simple instructions. (A.R. 239-240). According to Plaintiff, it is reasonable to conclude from these statements that Plaintiff's ability to read and write is likewise limited. Plaintiff contends that a consultative examination should have been ordered by ALJ to resolve this conflict in the medical record about her ability to read and write.

As mentioned above, adequate medical evidence existed on record to allow ALJ to determine that Plaintiff was relatively unimpaired and responded to medications for management of her mental health conditions. (A.R. 20, 60, 167, 172, 206, 336-339, 345-346, 374). The ALJ considered the information in the form filled out by Dr. Nguyen, but gave it little weight because it was not supported by any treatment records and was inconsistent with the several years of treatment evidence on record. Also, the ALJ pointed out that the form was a check-marked form with no notes, and Dr. Nguyen did not indicate any underlying medical impairment. (A.R. 239-240). A consultative psychiatric review was conducted on August 16, 2005 by a state agency physician and found only mild limitations in Plaintiff's ability maintaining concentration, persistence, or pace. The physician determined that whatever impairments Plaintiff had did not significantly decrease her ability to function. (A.R. 206-218). Upon reconsideration of her application, another consultative exam was scheduled, but Plaintiff did not attend either of the two appointments made by SSA on her behalf. (A.R. 61, 235). The ALJ properly considered Dr. Nguyen's opinion and resolved any minor conflicts in the evidence on record. There was not a duty to

order another consultative exam or develop the record further.

### D. The ALJ properly determined that Plaintiff could perform other work.

Plaintiff claims that the ALJ erred in determining that Plaintiff is capable of making successful adjustment to other work that exists in significant numbers in the national economy. Although the ALJ found that Plaintiff could perform work at any exertional level, the ALJ also factored in Plaintiff's other limitations when questioning the vocational expert during hearing proceedings. The ALJ asked the vocational expert whether jobs existed in the national economy that could be performed by a hypothetical person with the same age, education, lack of past work, and mental limitations as Plaintiff. The vocational expert testified that such a person could work as a housekeeping cleaner, garment sorter, or industrial cleaner, all which exist in significant numbers in the national economy.

Plaintiff argues that the ALJ's finding that Plaintiff could perform other work as a cleaner or garment sorter is in error because Plaintiff does not have the requisite reading and writing skills listed under the job descriptions for each position in the Directory of Occupational Titles (DOT). The DOT states that as a housekeeping cleaner or garment sorter, a worker must be able to recognize the meaning of 2,500 words, read at 95-120 words per minute, and print simple sentences. The industrial cleaner position requires a passive vocabulary of 5,000-6,000 words, a reading rate of 190-215 words per minute, and the ability to write compound and complex sentences.

The assumptions contained in an ALJ's hypothetical to a vocational expert must be supported by the record; otherwise, the opinion of the vocational expert has no evidentiary value. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). The hypothetical question must be accurate, detailed, and supported by the

medical record. Gamer v. Secretary of Health & Human Servs., 815 F.2d 1275, 1279-80 (9th Cir. 1987); Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). An improper hypothetical question cannot serve as substantial evidence under 42 U.S.C. sec. 405 (g) and can result in a remand or reversal. Gallant, 753 F.2d at 1456.

Plaintiff testified during the hearing that she never learned to read and write. As discussed above, the ALJ properly resolved conflicting evidence on Plaintiff's ability to read and write and properly assessed that Plaintiff's credibility was suspect. The hypothetical given to the vocational expert assumed a 10th grade education level. (A.R. 383-384). Plaintiff reported to the SSA claims representative she meet with on June 16, 2005 that the highest grade of school she completed was 10th grade. (A.R. 97). Also, plaintiff's parole records dated May 2006 show her highest education level was 11th grade. (A.R. 353). Therefore, the record supports the assumption of a 10th grade reading level in the ALJ's hypothetical to the vocational expert. Given the evidence on record and the testimony of the vocational expert, the ALJ properly determined that the Plaintiff could perform other work that exists in significant numbers in the national economy.

## V. CONCLUSION AND ORDER

For the foregoing reasons, the decision of the Commissioner is affirmed and this Complaint is dismissed.

DATED: September 23, 2009

/ s /
_____
STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE